## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPHINE B. DONAHUE, on behalf of herself and all others similarly situated, | ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) )    CA No. 17 -10635-DJC |
| GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, OCWEN LOAN SERVICING, LLC, | ) ) ) ) |
| *Defendant* | ) ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT OCWEN'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

Representative Plaintiff, Josephine B. Donahue (Plaintiff), hereby opposes Defendant, Ocwen Loan Servicing, LLC's (Ocwen), Motion for Summary Judgment pursuant to Fed. R. Civ. 56.  As grounds, Plaintiff states that there are genuine issues of material fact that cannot be decided as a matter of law and that she is entitled to a determination by a fact finder of said material disputed facts. Therefore, for the reasons as set forth herein, and any argument presented at hearing on this matter, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment, in its entirety, for Defendant's failure to prove that there are no genuine issues as to any material fact and that they are entitled to judgment as a matter of law.

## GENERAL FACTS AND RELEVANT BACKGROUND

All FHA standard mortgage contracts at paragraph 9(d) state that regulations issued by the Secretary of Housing and Urban Development (Secretary) will limit a Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 9(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.   At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.  (See: 24 CFR 203.604(b)). (Emphasis Added).

24 CFR 203.604(c) further states that a face-to-face meeting is not required if: (1) the mortgagor does not reside in the mortgaged property, (2) the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, (3) the mortgagor has clearly indicated that he/she will not cooperate in the interview, (4) a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or (5) a reasonable effort to arrange a meeting is unsuccessful.  (See: 24 CFR 203.604(c)). (Emphasis Added).

24 CFR 203.604(d) additionally states that a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer,

or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property. (See: 24 CFR 203.604(d)). (Emphasis Added).

## FACTS

Plaintiff is the owner of real property located at  82 Cobb Lane, Scituate, MA 02066, which is a subject property referenced herein. On June 22, 2010, Plaintiff executed a note and mortgage, secured by the subject property, both in the amount of $484,330.00, to Reliant Mortgage Company, LLC[1]. (the Donahue Mortgage, and Donahue Note). The Donahue Mortgage was designated as an FHA mortgage and said mortgage is noted as such on page one (1) as FHA Case Number 451-4177468-703. On June 10, 2014, the Donahue Mortgage was assigned from Mortgage Electronic Registration Systems, Inc. to Defendant Ocwen. As the Donahue Mortgage is an FHA mortgage, it is subject to regulations issued by the Secretary of Housing and Urban Development (Secretary), including 24 C.F.R. § 203.604(b).

After assignment of the Donahue Mortgage, Ocwen became the Issuer of a Ginnie Mae pool which includes the Donahue Mortgage and Note.  It is undisputed that the Donahue Note is held by Ocwen, on Ginnie Mae's behalf.[2]  Plaintiff first went into default for four consecutive months from September of 2014, October 2014, November 2014 and December 2014 before the loan was reinstated in January of 2015.  At no time does Defendant proffer evidence showing that it attempted to comply with 24 CFR 203.604 during this time period and Plaintiff's reinstatement of the loan in January 2015 supports Plaintiff's position by Defendant's own

---

[1] The subject mortgage was given to Reliant Mortgage Company, LLC as Lender and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee and nominee of Lender.
[2] The Defendant has admitted in their Memorandum in Support of their Motion for Summary Judgment that Ocwen does in fact hold (allegedly in a document custodial capacity) the Donahue Note on behalf of Ginnie Mae. (See: Defendant's Memorandum Id. at II: Undisputed Material Facts, Sec. C:.Ocwen's Foreclosure on Behalf of Investor, specifically; Id. at page 6, lines 6-9; "On or about July 21, 2016, Ocwen, who had been assigned the mortgage in 2014 and held the note on behalf of Ginnie Mae, foreclosed and was the highest bidder at the foreclosure auction."). (Emphasis Added).

admission that she had the willingness and ability to pay the default balance.  See; Covarrubias v. CitiMortgage, Inc., 623 F. App'x 592 (4th Cir. 2015) (per curiam), in which the grant of summary judgment was vacated based on concrete evidence of the plaintiff's "willingness and ability to bring the mortgage current had [the mortgagee] arranged a face-to face meeting, and . . . a loss of equity as a direct result of foreclosure." Id. at 593-94).  Plaintiff again defaulted on the Donahue Mortgage in March of 2015. (See: Defendant's Memorandum Id. at II: Undisputed Material Facts, Sec. B, footnote 1; Plaintiff defaulted on her loan payments in or around September, 2014. (*Exhibit B*, 25:10-25, 26:1-3.) The loan was reinstated in or about January, 2015, and Plaintiff defaulted again soon after in or around March, 2015. Plaintiff failed to bring her account current and remained in default on her loan from March, 2015 until the foreclosure in July, 2016.."). Considering Plaintiffs default in March of 2015, the Plaintiff was three months in default on the payments due under the Donahue Mortgage in November of 2014 and again in May of 2015.

The Defendant has admitted (and Plaintiff does not dispute) that they sent the first letter pursuant to 24 CFR § 203.604(b) to Plaintiff on October 28, 2015. (See: Defendant's Memorandum, Id. at II: Undisputed Material Facts, Sec. B, page 4, ¶ 2; "…On or about October 28, 2015, Ocwen Sent Plaintiff a letter pursuant to 24 CFR § 203.604(b) informing her of the opportunity to have a face-to-face interview with an Ocwen representative…."). (See also: Defendant's SOF ¶ 20, & SOF Exhibit F, Affidavit of Katherine Ortwerth, Id. at ¶ 20; "Ocwen's First HUD Face-to Face Letter, dated October 28, 2015, was sent certified mail, return receipt requested."). Therefore, the first letter sent by Defendant to Plaintiff pursuant to 24 CFR § 203.604(b) was mailed over eight (8) months after the Plaintiff's default.

The Defendant has also admitted their representative visited the subject property in attempt to arrange a face-to-face meeting pursuant to 24 CFR § 203.604(b), on February 2, 2016, which is more than eleven (11) months after Plaintiff's default. (See: Defendant's Memorandum, Id. at II: Undisputed Material Facts, Sec. B, page 5, ¶ 1; "In addition to sending the first HUD face-to-face letter, Ocwen visited the Property and left a door hanger on or about February 2, 2016."). (See also: Defendant's SOF ¶ 25, & SOF Exhibit P). It is further undisputed that Defendant Ocwen foreclosed and conducted a mortgagee's foreclosure sale on July 21, 2016 and that Ocwen was the highest bidder at said sale.

As such, it cannot be disputed that Defendant Ocwen failed to have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage were unpaid.  (See: 24 CFR 203.604(b)).

On or about June 17, 2016, Note-holder Ginnie Mae and mortgagee Ocwen retained Harmon Law, P.C. to foreclose the subject matter mortgage, and caused to be sent to Plaintiff a Notice of Mortgagee's Foreclosure Sale which stated a sale date of July 21, 2016.  On July 21, 2016, the Defendants foreclosed the subject mortgage and sole the property at foreclosure auction. Ocwen was the highest bidder at said foreclosure auction and purchased the subject property for $482,264.79.

Plaintiff alleges that the foreclosure purportedly conducted by the Defendants is in breach of the mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

Plaintiff alleges that Ocwen did not have a face to face interview with her, and that Ocwen made no effort to arrange such a meeting, before three full monthly installments due on the mortgage were unpaid.  Plaintiff further alleges that her subject property is within 200 miles of a branch office of the Defendants; and that she occupied and still occupies the mortgaged property as her primary residence; and she never clearly indicated to the Defendants that she would not cooperate with such an interview; and she did not enter into a repayment plan, where payments thereunder were current, consistent with her circumstances to bring her account current, thus making a meeting unnecessary pursuant to said regulation.

Plaintiff further states that, during the time prior to becoming three months in default, she was willing to bring the mortgage current and had the financial ability to do so.

Plaintiff, alleges that she and Defendants formed a valid contract and Plaintiff was, is, and remains ready willing and able to perform under the contract. Defendants allegedly breached the mortgage contract of Plaintiff by refusing to honor the terms of the mortgage as stated at paragraph 9(d) which states in pertinent part;

> 9(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

It is a regulation of the Secretary codified in 24 CFR 203.604(b) that:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid...  (See: 24 CFR .604(b)).

Defendant allegedly failed to have a face to face meeting with Plaintiff before three full monthly installments due on the mortgages were unpaid. Further, Defendant allegedly failed to

make reasonable efforts to arrange such a meeting with Plaintiff.  Plaintiff alleges that she suffered harm and is threatened with additional harm from Defendants breach, including but not limited to loss of property interest, loss of equity, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

## LEGAL STANDARD

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Johnson v. Gordon, 409 F.3d 12, 16-17 (1st Cir. 2005) [quoting Garside v. Osco Grug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)].  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party.  Tavares v. Union Corp., 17 F.Supp 2d 69, 74 (D.R.I. 1998) [citing Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F. 2d 370, 373 (1st Cir. 1991)].

"Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits.  A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation.  To defeat a motion for summary judgment, evidence offered by the

non-movant 'must be significantly probative of specific facts.'"   Prescott v. Higgins, 538 F.3d

32, 40 (1st Cir. 2008)

## ARGUMENT

### I.   Plaintiff's Claim for Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing

In their Memorandum in Support of their Motion for Summary Judgment (Motion), the

Defendant argues that Plaintiff's breach of contract claim is based on ""…the erroneous

allegation that Ocwen failed to conduct a face-to-face interview with Plaintiff in accordance with

24 C.F.R. § 203.604(b), as required by Paragraph 9 of the Mortgage. As a result of Ocwen's

purported failure to hold such a meeting, Plaintiff claims she suffered harm, including loss of

property, detrimental credit reporting, and associated fees and charges. In order to prove a claim

for breach of contract, Plaintiff must establish "that a valid, binding contract existed, the

defendant breached the terms of the contract, and [she] sustained damages as a result of the

breach." *Ford v. Lehman Capital*. Plaintiff has failed to prove all of these elements, which is

fatal to Count III of her Complaint.""" However, the Defendant's argument is fatally flawed.

### A.  Ocwen Breached the Terms of the Mortgage

The Donahue Mortgage is undisputedly a valid and binding contract. (See: Mathews v.

PHH Mortgage, 724 S.E.2d 196, 199-200 (Va. 2012) "by its nature, the deed of trust is a contract

in which the parties have agreed that material breach of the note by non-payment will not deprive

borrowers of their rights to enforce the conditions precedent").  The Donahue Mortgage is also

an FHA insured mortgage which incorporates HUD regulations at paragraph 9(d) limiting a

Lender's rights, in the case of payment defaults, to require immediate payment in full, and to

foreclose, if not paid.  More specifically, Paragraph 9(d) of the Donahue Mortgage states it does

not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.  24

CFR 203.604(b), a regulation of the HUD Secretary, states that a mortgagee must have a face-to-face interview with the mortgagor or make <u>a reasonable effort</u> to arrange such a meeting, <u>before three full monthly installments due on the mortgage are unpaid</u>.   (See: 24 CFR 203.604(b)). (Emphasis added).   Additionally, 24 CFR 203.604(d) states that a reasonable effort to arrange a face-to-face meeting consists at a minimum that one letter be sent to the mortgagor, certified by the Postal Service as having been dispatched, and at least one trip to see the mortgagor at the mortgaged property. (See: 24 CFR 203.604(d)).

### i.    Defendant Failed to Make a Reasonable Effort to Arrange a Meeting Via Letter Pursuant to 24 CFR 203.604(d)

As duly noted by the Defendant, and undisputed by Plaintiff, the Plaintiff defaulted in or around March 2015 and remained in default from March 2015 until foreclosure in July 2016.  As such, Plaintiff was three months in default on the payments due under the Donahue Mortgage in May of 2015.   The Defendant has admitted in their Motion and supporting Affidavit that they sent the first letter pursuant to 24 CFR § 203.604(d) to Plaintiff on October 28, 2015. (See: Defendant's Memorandum, Id. at II: Undisputed Material Facts, Sec. B, page 4, ¶ 2; "…On or about October 28, 2015, Ocwen Sent Plaintiff a letter pursuant to 24 CFR § 203.604(b) informing her of the opportunity to have a face-to-face interview with an Ocwen representative…."). (See also: Defendant's SOF ¶ 20, & SOF Exhibit F, Affidavit of Katherine Ortwerth, Id. at ¶ 20; "Ocwen's First HUD Face-to Face Letter, dated October 28, 2015, was sent certified mail, return receipt requested.").

In opposition to Defendant's Motion for Summary Judgment, Plaintiff avers that the Defendant has failed to meet the burden of proof, pursuant to Rule 56, that no issue of material fact exists and that they are entitled to judgment as a matter of law because: 1) the Defendant has failed to meet their burden of proof that they complied with the certified letter requirement; and

2) the first letter sent by Defendant to Plaintiff was mailed over eight (8) months after the Plaintiff's default.

Pursuant to 24 CFR 203.604(d) the Defendant must show that the letter was "*certified by the Postal Service as having been dispatched*".  The Plaintiff avers that the Defendant has not met its' burden of proof regarding this necessary requirement, as set out by the plain and ordinary meaning of 24 CFR § 203.604(d) because it has not offered proof "from the Postal Service" that the certified letter was "dispatched". (See: PNC Bank, Nat'l Ass'n v. Wilson, 2017 Il. App. (2d) 151189, ¶ 18, 411 Ill. Dec. 791, 74 N.E.3d 100 "The plain and ordinary meaning of section 203.604(d) requires proof from the United States Postal Service that the letter was sent."; "In addition, we take judicial notice that the United States Postal Service (USPS) provides proof of mailing in the form of a 'certificate' for the cost of $1.30"); See also: PNC Mortgage v. Krynicki, 85 N.E.3d 1024, 1032 (Ohio Ct. App. Mar. 1, 2017) (affidavit of compliance with 203.604 from mortgagee without supporting evidence of compliance creates issue of fact on summary judgment where borrower offers contradicting affidavit that certified letter was not received); See also: See also U.S. Bank Trust Nat'l Ass'n v. Lopez, No. 2-16-0967, 2018 IL App (2d) 160967, ¶ 31-39 (Ill. App. Ct. 2d, May 4, 2018) [where affidavit, letter, shipping label, and 'screenprint of a dispatch' are presented by the mortgagee as proof of compliance with 203.604(d) and mortgagor presents affidavit of non-receipt, issue of material fact exists because the mortgagee has failed to offer proof from 'the carrier' that it substantially complied with 203.604(d)]; See also U.S. Bank Trust Nat'l Ass', v. Hernandez, 2017 IL App (2d) 160850, 88 N.E. 3d 1056, 1063, ("even substantial compliance with section 203.604(d) would require proof from the carrier that the letter was 'dispatched'").

In <u>U.S. Bank Trust Nat'l Ass', v. Hernandez</u>, 2017 IL App (2d) 160850, 88 N.E. 3d 1056, 1063 the court held that the mortgagee failed to prove, as a matter of law, that it "even substantially" complied with section 203.604(d)'s "attempt-by-letter" requirement because the FedEx shipping label did not demonstrate conclusively that the mortgagee sent the borrowers a letter offering a face-to-face meeting.  Although the Defendant submitted an Affidavit stating that the first letter was in fact dispatched, their Exhibit submitted in support of same only shows a tracking number. (See: Defendant's Exhibit L to SOF Exhibit F, Affidavit of Katherine Ortwerth).  A tracking number alone fails to show compliance with the certified letter requirement of 24 CFR § 203.604(d), which necessitates certification "by the Postal Service" that the letter was actually "dispatched".  An affidavit executed by an employee of the Defendant that the notice was sent is not certification by the Postal Service, or the equivalent thereof, that the letter was in fact dispatched.  A tracking number with no identifiable evidence, such as a certified mail receipt or confirmation of any kind from the Postal Service indicating that the letter in question was dispatched, as offered by Defendant in their supporting Exhibits, does not meet the standard as set by 24 CFR 203.604(d). The lack of any evidence from the USPS tracking system that the purported letter was in fact dispatched, clearly demonstrates that the requirement of 24 CFR 203.604(d) has not been complied with and a question of fact exists as to whether the Defendant complied with this requirement.   Such proof is absent in Defendant's pleadings and supporting evidence which only shows a purported tracking number on a letter the same way the mortgagee only presented the shipping label in <u>Hernandez</u>.

Moreover, the Defendant references that they sent two (2) HUD Face-to Face letters via USPS, one on October 28, 2015 and one on February 5, 2016. As noted in Plaintiff's SOF, both letters bear the same exact certified tracking number, which alone would be enough to indicate

that the letters were not actually sent. However, in addition to the identical tracking numbers, the tracking information for said tracking number states that at least one of the letters was received by the USPS regional facility in San Bernardino California on March 7, 2016 and that said letter was delivered to its addressed destination on March 9, 2016 to an address in Temecula California. (See Plaintiff's SOF Exhibit C).

Pursuant to Fed. R. Civ. P. 56(c), the burden rests on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Defendant has failed to offer any proof from USPS that the letter was in fact actually "dispatched" and such failure to maintain their burden of proof pursuant to and in accordance with the plain and ordinary meaning of 24 CFR § 203.604(d) gives rise to a material fact that is in dispute which cannot be decided as a matter of law.  Therefore, their motion fails to meet the bar set by Rule 56 and must be denied.

### ii.    The Defendant Failed to Make a Trip To The Property to Arrange a Face to Face Meeting Pursuant to 24 CFR 203.604(d)

The Defendant has also admitted their representative visited the subject property in attempt to arrange a face-to-face meeting pursuant to 24 CFR § 203.604(b), on February 2, 2016, which is more than eleven (11) months after Plaintiff's default. (See: Defendant's Memorandum, Id. at II: Undisputed Material Facts, Sec. B, page 5, ¶ 1; "In addition to sending the first HUD face-to-face letter, Ocwen visited the Property and left a door hanger on or about February 2, 2016."). (See also: Defendant's SOF ¶ 25, & SOF Exhibit P). It is further undisputed that Defendant Ocwen foreclosed and conducted a mortgagee's foreclosure sale on July 21, 2016 and that Ocwen was the highest bidder at said sale.

In a decision of the Western Housing Court of Massachusetts in the post-foreclosure eviction case of Freedom Mortgage Corp. v. Newsome, (Docket # 12-SP-2461, Fein, J. Western Housing Court, September 1, 2017), the court rescinded a foreclosure not only because the attempt to make a trip to the property was conducted outside of the loan being three months unpaid but also because there was "no evidence that the agent who went to the property . . . did so…with authority to conduct a face-to-face meeting. . .".  The Newsome decision was mindful to reference the FHA Handbook which states that a face-to-face interview should be with a "mortgage employee" to "determine the cause of the default, obtain financial information, establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors."  (See: Newsome Id. at p. 6 *citing* FHA Handbook 4330.1 Rev-5, § 7-7(C)(1) (1994) and the Mass. Appeals Court decision of Wells Fargo Bank, N.A. v. Cook, 87 Mass. App. Ct. at 382, 388 (2015) which stated that "The HUD Handbook makes clear that representatives conducting the face-to-face interview must have the authority to propose and accept reasonable repayment plans because the interview has little value if the mortgagee's representative must take proposals back to a superior for a decision.").

The Affidavit of Katherine Ortwerth states that "Ocwen's vendor visited the Property and left a door hanger which included a second HUD face-to face letter informing Plaintiff of the opportunity to schedule a meeting with an Ocwen Representative.".  (See: Defendant's Exhibit P to SOF Exhibit F, Affidavit of Katherine Ortwerth).  However, Ms. Ortwerth's Affidavit fails to mention the whether the vendor, Safeguard Properties, had qualifications or authority to conduct a face-to-face meeting for the purpose of resolving mortgage delinquencies in accordance with the above requirements of FHA and HUD.  Plaintiff avers that the Defendant failed to comply with the trip to the property requirement as laid out and described by FHA because the above

referenced Handbook section specifically guards against the exact type of meaningless contact purported to have been made in this case.  There is no assertion by the Defendant that Safeguard Properties had any authority or power whatsoever to "determine the cause of the default, obtain financial information, establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors." in accordance with FHA Handbook 4330.1 Rev-5, § 7-7(C)(1) (1994).  As set forth by the FHA Handbook the purpose of the trip to the house was not to just give a notice by the Defendant saying call us, but rather to have a meaningful discussion with an employee or agent of the Defendant with the authority to actually help the Defendant avoid foreclosure.  That has clearly not been presented in the Defendants Motion or supporting Affidavits or Exhibits submitted therewith.

Furthermore, the Defendant has failed to demonstrate any evidence to support that a representative from Safeguard Properties had any authority to even arrange a face to face meeting as required pursuant to HUD Regulations. Safeguard Properties web site[3] states that they offer the following services; 1) Property Inspections; 2) Property Preservation; 3) Real Estate Maintenance; 4) Yard Maintenance and Snow Removal; 5) FHA Conveyance Services to manage the FHA post-sale process to avoid reconveyances; 6) Property Registration; 7) Estimates and Repairs; 8) High Risk Code Enforcement; and 9) Map Alert, a Geo-Spatial Mapping Technology. Nowhere among Safeguard Properties list of offered services is there any indicator that they provide specialized services with the power and authority to arrange face to face meetings with mortgagors of FHA loans. (See: Plaintiff's SOF Exhibit B).

The Defendant reliance on the recent decision in Grimaldi v. US Bank Nat'l Ass'n, et al, (CA# 1:16-cv-00519 April 27, 2018) in support of their argument on this issue is mere sleight of hand.  In Grimaldi the court granted summary judgment to the defendant bank when it was

---

[3] https://safeguardproperties.com/services/

shown, via sworn affidavit and an exhibit of a notice left in the mailbox of the mortgaged property, that a trip to the mortgaged property for the purpose of conducting a face-to-face meeting was accomplished.  In <u>Grimaldi</u> the defendant bank presented an affidavit from an individual named Cliff Dunnan who swore under the penalties of perjury that he appeared in person on a specific date, "knocked loudly", rang the doorbell 2 times and left a letter in the mailbox that specifically stated that he was there for the purpose of requesting a face-to-face interview pursuant to 24 CFR 203.604.  In this case, however, no such affidavit based on first-hand personal knowledge of a trip to the property has been presented

Plaintiff denies ever receiving any notice of a face-to-face meeting by Safeguard Properties or Ocwen either by mail or left at the door of the property.  The Defendant admits that no one was at the property during this alleged trip to the property.  Furthermore, the purported trip to the property was made on March 4, 2012 which was beyond the mortgage being unpaid for 3 months contrary to the regulation of the HUD Secretary 24 CFR 203.604.  Therefore, the Plaintiff respectfully request that the Court find that, in light of the above, a disputed fact exists as to whether or not a true trip to the property was conducted within 3 months of the mortgage being unpaid in accordance with the purpose and meaning of 24 CFR § 203.604.

### iii.   Strict Compliance with Terms of the Mortgage and Ocwen's Breach of Contract

The Courts of Massachusetts now overwhelmingly support the position that a violation of 24 CFR 203.604 is a breach of the mortgage contract itself that specifically prohibits acceleration, foreclosure, and sale.  As a condition precedent to acceleration and foreclosure the Defendant's "failure to comply with 24 CFR 203.604(b) deprived Defendant of their right to invoke the statutory power of sale required to foreclose and the foreclosure was void ab initio". <u>Everbank v. Chacon</u>, 92 Mass. App. Ct. 1101 (2017). Massachusetts Courts have required strict

compliance with the terms of the mortgage when exercising the power of sale.  In Wells Fargo v. Cook, 87 Mass. App. Ct. 382, 385-387 (2015) the Massachusetts Court of Appeals vacated the summary judgment of the lower court in light of the homeowner's allegations that Wells Fargo failed to comply with paragraph 9(d) of the subject FHA insured mortgage and held that even in a post-foreclosure eviction action, legal title must be established "by proof that the title was acquired strictly according to the power of sale provided in the mortgage". (citing Bank of New York v. Bailey, 460 Mass. 327, 333 (2011), quoting from Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966). "Failure to comply strictly with the power of sale renders the foreclosure sale void." U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421, 428 (2014)).  The paragraph 9(d) of the mortgage in Cook was identical to the paragraph 9(d) of the Mortgage at issue in this case. The Cook Court held further that a fifteen-minute counseling session at Gillette Stadium failed to meet the requirements of a face-to-face interview because the interview failed to satisfy the reoccurring HUD theme of personalized consideration of each homeowner.

The Cook Court reasoned that paragraph 9(d) is a "condition precedent" to the power of sale contained in the mortgage that "expressly preconditioned acceleration and foreclosure on compliance with HUD regulations."  Id.  The Cook Court further explained that 24 CFR 203.603 was "incorporated into the mortgage" and that "compliance with the regulations has been held to be a condition precedent to foreclosure of FHA-insured mortgages".  Id. at 386 citing Pfeifer v. Countrywide Home Loans, Inc. 211 Cal. App. 4th 1250, 1255 (2012); Lacy-McKinney v. Taylor, Bean & Whitaker Mort. Corp., 937 N.E.2d 853, 864 (Ind. Ct. App. 2010); Wells Fargo Home Mort., Inc. v. neal, 398 Md. 705, 721-728 (2007); Mathews v. PHH Mort. Corp., 283 Va. 723, 736-737 (2012).

Since the parties had expressly agreed in the mortgage that acceleration or foreclosure are barred if not permitted by regulations of the HUD Secretary, the Defendant had not acquired the right to accelerate payment and take away the Plaintiff's right to a face to face meeting, before she was three months in default, which may have resulted in a resolution of her default. (See Squire v. Virginia Housing Dev. Auth., 758 S.E.2d 55 (Va. 2014) ["because the mortgagee failed to give the required notice, it 'had not acquired the right to accelerate payment'.  Mathews v. PHH Mortgage, 724 S.E.2d 196, 199-200 (Va. 2012) ("the fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent"; "by its nature, the deed of trust is a contract in which the parties have agreed that material breach of the note by non-payment will not deprive borrowers of their rights to enforce the conditions precedent").

In another more recent post-foreclosure claim of a breach of paragraph 9(d) of a borrower's FHA insured mortgage, the Massachusetts Appeals Court in Jose v. Wells Fargo, 89 Mass App. Ct. 772 (2016), reiterated its decisions in Cook as well as the Massachusetts Supreme Judicial Court's decision in Pinti v. Emigrant Mort. Co., 472 Mass. 226 (2015).  While Pinti held that terms of a mortgage relating to a mortgagee's exercise of the power of sale "must be strictly complied with" (See 472 Mass. At 240), Cook "in turn held that the terms of the mortgage include terms of regulations incorporated by reference into the mortgage (specifically including the HUD regulatory requirement for a face-to-face meeting).  87 Mass. App. Ct. at 386".

The standard of strict compliance promulgated by the Massachusetts Statutory Power of Sale begs the question if failure to strictly comply with 203.604 would forever bar foreclosure under the requirement that the mortgagee strictly adhere to the the terms of the mortgage contract.  Realistically and practically Plaintiff's counsel, in taking into account the decision in Grimaldi v. U.S. Bank N.A., CV 16-519 WES, 2018 WL 1997277 (D.R.I. Apr. 27, 2018),

understands that if a mortgagee's failure to make a reasonable effort to comply with 203.604 within three month were to forever bar the mortgagee from initiating foreclosure the regulation "may have too much force".  See <u>Washington Bank v. Mahaffey</u>, 154 Ohio App. 3d 44, 2003-Ohio-4422, 796 N.E.2d 39 ¶ 22. However, Plaintiff's counsel also asks the Court to look to a "commonsense construction of the regulation" that "requires . . . that a lender either have a face-to-face interview or make a reasonable effort to arrange the interview before bringing a foreclosure action. . ." <u>Id.</u>

The Ohio Appellate Court case of <u>RBS Citizens NA v. Sharp</u>, No. 17 MA 0059, 2018 WL 3147976, at *4 (Ohio Ct. App. June 22, 2018) focused on the timeliness aspect to the regulation.  In <u>Sharp</u> the court stated that "under our reading of the regulation, the specific time deadlines referenced by the court are aspirational, whereas the obligation to perform those conditions (i.e. the requirement to actually have a face-to-face meeting, absent one of the stated exceptions), is mandatory." <u>Id</u>. at ¶ 14 citing <u>PNC v. Garland</u>, 7th Dist. No 12 MA 222, 2014-Ohio-1173 and <u>Bank of Am. V. Bobovyik</u>, 7th Dist. No. 13 CO 54, 2014-Ohio05499.  Therefore, the requirements of 24 CFR 203.604(b) must be met "prior to initiating the foreclosure".  See also <u>Liberty Sav. Bank, F.S.B. v. Bowie</u>, 9th Dist. Summit No. 27126, 2014-Ohio-1208. Plaintiff's counsel believes that the requirement that the regulation be complied with prior to initiation of foreclosure proceedings is consistent with the holding in <u>Grimaldi</u>, which held that the bank complied with 24 CFR 203.604 because they sent letters during the initial three-month time period offering a face-to-face meeting and made a personal visit to the property five years later than the regulation required.  <u>Grimaldi</u>, 2018 WL 1997277, at *3. [(See also <u>Wells Fargo Bank, N.A. v. Burd</u>, No. 15AP-1044, 2016-Ohio-7706) (bank failed to comply with 203.604(b)

where unsuccessful court-sponsored mediation occurred after foreclosure proceeding had been initiated)].

While the Plaintiff avers that under the Statutory Power of Sale and the terms of the mortgage contract 24 CFR 203.604 must be complied with prior to initiating foreclosure, the Plaintiff also avers that under a breach of contract theory it appears that if damages exist by virtue of a "loss of equity as a direct result of foreclosure" and a "willingness and ability to bring the mortgage current" within 3 months of the mortgage being unpaid, the timeliness of compliance with the regulation must be strictly construed.   For if damages exist from the time three months are unpaid by virtue of loss of equity due to a higher balance caused by late fees, extra costs and interest, the Defendant's failure to strictly comply within the three months theoretically and plausibly caused the higher balance on the mortgage and the loss of equity. Therefore, the Plaintiff sets forth that the Defendant had not met its' burden because: 1) it has not shown any evidence *from the Postal Service* that the purported certified letter was in fact sent in accordance with the language of the regulation; and 2) it has not shown that the purported trip to the property was made within three months of the mortgage being unpaid in accordance with the plain language of the regulation.  With the clear weight of these decisions supporting Plaintiff's claim for breach of contract, the facts of this case clearly show that Ocwen did breach the contract at issue.

### iv.    Plaintiff Has Suffered Damages

The Defendant argues in their Motion that Plaintiff has failed to satisfy the third prong of a breach of contract claim because she has not shown that she sustained damages as the result of Ocwen's breach.   In the context of face-to-face meeting breach-of-contract cases, aside from demonstrating proof of loss of equity in the property, the Plaintiff must also prove the ability to

bring the mortgage current during the pertinent time period. (See; Covarrubias v. CitiMortgage, Inc., 623 F. App'x 592 (4th Cir. 2015) (per curiam), in which the grant of summary judgment was vacated based on concrete evidence of the plaintiff's "willingness and ability to bring the mortgage current had [the mortgagee] arranged a face-to face meeting, and . . . a loss of equity as a direct result of foreclosure." Id. at 593-94); (See also: Squire v. Va. Hous. Dev. Auth., 758 S.E.2d 55, 60-61 (Va. 2014) loss of equity establishes that damage was caused by mortgagee's failure to send notice that was condition precedent to right to accelerate).  Despite their efforts to down-play it, the Defendant's Motion makes clear that a considerable loss of equity has been suffered by the Plaintiff at the time of the foreclosure and Plaintiff sets forth that she had the willingness and ability to pay off the default balance during the three months in which Defendant failed to comply with paragraph 9(d) of the mortgage and 24 CFR 203.604.

Plaintiff avers that she did in fact have the ability to bring the mortgage current during the pertinent time period and was willing to do so because she had the ability to liquidate her retirement account and bring the mortgage current.  (See Affidavit of Plaintiff Josephine B. Donahue ¶15-17 & Exhibit 4 attached to Affidavit).  Plaintiff's IRA account statements with Fidelity Investments[4] clearly demonstrates that she had the ability to bring the mortgage current had the Defendant arranged, or even attempted to arrange a face-to-face meeting prior to the Plaintiff being three months in default.  Even accepting Defendant's argument that their purported certified letter and dispatch of vendor Safeguard Properties were in fact made, which Plaintiff does not accept, the Defendant's failure to attempt to arrange a face-to-face meeting prior to Plaintiff being three months in default, coupled with Plaintiff's evidence of ability and stated willingness to bring the mortgage current, supports Plaintiff's claim that her loss in equity

---

[4] See: Exhibit 4 od Plaintiff Josephine B. Donahue's Affidavit in Support of Opposition, Plaintiff's IRA account statements with Fidelity Investments showing an average balance of $36,404.25 between March 1, 2015 through May 30, 2015.

damages were the direct result of Ocwen's wrongful foreclosure, caused by their failure to substantially comply with the face-to-face meeting requirement of 24 CFR § 203.604, which was condition precedent to the right to accelerate.

Although Plaintiff and Defendant dispute the value of the property at the time of sale, even assuming *arguendo* that Defendant's assessment of the value of the property is correct, which Plaintiff does not, damages in the form of loss of equity are still clearly shown. It is undisputed that the property was sold back to Ocwen at foreclosure sale for $482,264.79 while Plaintiff owed $484,416.14 according to Ocwen's own records.   (See Affidavit of Plaintiff Josephine B. Donahue ¶7-8 & Exhibit 1 attached to Affidavit).   Using Defendant's disputed assessment of the value of property at $500,000.00, simple math demonstrates that Plaintiff suffered a loss of equity amounting to $15,583.86.   (See Affidavit of Plaintiff Josephine B. Donahue ¶15-17 & Exhibit 2 attached to Affidavit).   Additionally, according to records of the Scituate Assessor's Office, the Tax Assessment of the Property by the for the Fiscal Year 2016 is $589,900.00. Moreover, Realtor.com, a website licensed to operate by the National Association of Realtors (NAR), the real estate industry's largest trade association, shows the value of the property at $633,500.00 in June of 2016. (See: Affidavit of Plaintiff Josephine B. Donahue ¶19 & Exhibit 6 attached to Affidavit).

The Defendant approaches this argument as if their admitted loss of equity of $15,583.86 is inconsequential stating in their Motion that "…the fair market value of the Property at or around the time of foreclosure sale was $500,000. (Defendant's SOF ¶¶ 35-36.) Thus, contrary to Plaintiff's argument that she lost equity in the Property…the Property sold back to the bank for at or around its fair market value of $500,000." However, although the loss of $15,583.86 may be insignificant to Defendant, Plaintiff argues that to her it such loss is not. Plaintiff avers that

this disparity between the Defendant's estimated value, Plaintiff's estimate of value and the significant loss in equity shown, even when using Defendant's lower figures, which Plaintiff disputes, all support Plaintiff's averment that she suffered damages and thus has met the standard to prove same in support of her claim of breach of contract.   Therefore, the Plaintiff avers that she has proved the existence and breach of a contract, and that the breach caused her damage. (See: Petrarca v. Fidelity and Casualty Ins. Co., 884 A.2d 406, 410 (R.I. 2005)).

II.   **Plaintiff Objects To The Defendant's Contention That Damages Must Be Shown Because The Foreclosure Is Void Because The Defendant Breached The Statutory Power Of Sale By Virtue Of Breaching An Essential Purpose Of The Mortgage Contract.**

The Plaintiff avers that the Defendant's breached the Statutory Power of Sale in accordance with Mortgage Contract and that the foreclosure is void.   Furthermore, Plaintiff sets forth that the Court's contention that damages may not be shown because the Plaintiff's foreclosure was caused by the default and not the Defendant's failure to comply with 203.604 as incorporated by paragraph 9(d) of the mortgage is erroneous.   In light of the fact that paragraph 9(d) of the mortgage clearly contemplates what the Defendant must do after the Plaintiff has already defaulted, the Plaintiff's default was not a material breach of the mortgage contract. Mathews v. PHH Mortgage Corp., 724 S.E. 2d 196, 200 (Vir. 2012) ( in suit for damages alleging breach of 203.604 court stated "to accept PHH's argument, we would have to rule that conditions precedent to foreclosure in deeds of trust are nullities when the breach is by non-payment . . . Such a ruling would defy common sense . . . by its nature, the deed of trust is a contract in which the parties have agreed that material breach of the note by non-payment will not deprive borrowers of their rights to enforce the conditions precedent. Accordingly, non-payment of a note is not a material breach of a deed of trust").   In contrast the Defendant's failure to comply with 203.604 as incorporated by paragraph 9(d) of the mortgage was a material

breach of the mortgage because it defeated "an essential purpose of the contract."  Mathews at

200 citing Horton v. Horton, 487 S.E. 2d 200, 204 (Vir. 1997) ("proof of a specific amount of

monetary damages is not required when the evidence establishes that the breach was so central to

the parties agreement that it defeated an essential purpose of the contract.")  In further support of

this contention the Plaintiff sets forth Massachusetts Bankruptcy Judge Hoffman's decision in In

Silveira, CA 11-44812-MSH, Ad Pro No. 12-4036 (Bank. Court, D. Mass. May 2, 2013) which

cited Sinclair v. Donovan, 11-CV-00010, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011) in stating

that :

> "the fact that the contract specifically contemplates the Plaintiff
> falling into arrears by imposing obligations on the Defendant to do
> certain things in the event of arrearage prior to commencing
> foreclosure – such as having a face-to-face meeting with the
> mortgagor – suggests that simply falling into arrears on the note is
> not a material breach.  As the Plaintiff Homeowners contend (doc.
> 16 at 12-13), it indeed would be an absurd result if the Lender
> Defendants were allowed to ignore the contract terms drafted to
> govern their post-default conduct on the grounds that the
> mortgagors have defaulted.   We find that the HUD-FHA
> regulations concerning loss mitigation are enforceable terms of the
> mortagge contract between the parties and that Plaintiffs cannot be
> denied the benefit of these provisions by virtue of the fact of
> simple default".  citing Sinclair v. Donovan, 11-CV-00010, 2011
> WL 5326093 (S.D. Ohio Nov. 4, 2011)

Massachusetts permits non-judicial foreclosure under the statutory power of sale

contained at G. L. c. 183, § 21, so long as the terms of the mortgage and the statutes related to

the power of sale are strictly complied with. The statute states:

> Section 21. The following "power" shall be known as the
> "Statutory power of Sale", and may be incorporated in any
> mortgage by reference:
> (POWER)
> But upon any default in the performance or observance of the
> foregoing or other condition, the mortgagee or his executors,

administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, **first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale**, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

(Emphasis added).

As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage…" G.L. c. 183, § 21.  If a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void. U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void.").

In paragraph 9(d) and 24 CFR 203.604 as incorporated by the Mortgage, the Defendant agreed to make a reasonable effort to arrange a face-to-face meeting by notifying the Plaintiff via certified mail or at least one trip to the house within three months of the mortgage being unpaid. The Defendant has so far failed to show that the certified notice of the face-to-face meeting was "certified by the Postal Service as having been dispatched" and the trip to the property was made outside of the mortgage being unpaid for three months.  Therefore, the foreclosure is void under M.G.L. c. 183 § 21 because the mortgage did not authorize the Defendant to pursue foreclosure until it complied with the notice requirement of paragraph 9(d) and the Defendant has failed to show that it strictly complied with the requirements of 203.604(d).

### III.    Plaintiff Has Proved Breach of Covenant of Good Faith and Fair Dealing And  Breach of Duty of Good Faith and Reasonable Diligence

""The law governing a mortgagee's responsibility to the mortgagor in the exercise of a power of sale is relatively straightforward. The mortgagee "must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." (See: Williams v. Resolution GGF OY, 630 N.E.2d 581, 584 (Mass. 1994) citing Seppala & Aho Constr. Co. v. Petersen, 373 Mass. 316, 320 (1977), quoting West Roxbury Co-op. Bank v. Bowser, 324 Mass. 489, 492 (1949); Cambridge Sav. Bank v. Cronin, 289 Mass. 379, 382 (1935)).

As reasoned by the First Circuit in Lass v. Bank of America, N.A.; ""The covenant of good faith and fair dealing…is implicit in every contract in Massachusetts. See Uno Rests., Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004); Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991). "[T]he purpose of the implied covenant is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract and that when performing the obligations of the contract, the parties remain faithful to the intended and agreed expectations of the contract." FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009) (quoting Chokel v. Genzyme Corp., 867 N.E.2d 325, 329 (Mass. 2007)) (internal quotation marks omitted); see also Nile v. Nile, 734 N.E.2d 1153, 1160 (Mass. 2000)…In keeping with our analysis in Kolbe, we conclude that these allegations of "unfair[], unjust[], and unlawful[]" conduct are sufficient to state a claim for violation of the covenant of good faith and fair dealing. See Am. Compl., ¶¶ 3, 4. …The Bank argues that Lass's allegations are merely conclusory assertions that fail to establish a plausible claim for relief. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). To the contrary, Lass points to specific facts that, once developed with the aid of discovery, could support the implied covenant claim: …Hence, as in Kolbe, we conclude that Lass's complaint alleges sufficient facts to

establish a breach of the covenant of good faith and fair dealing that is "'plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The claim must therefore be reinstated."" Lass v. Bank of America, N.A., 11-2037 (1st Cir. 2012). (Emphasis Added).

As in Lass, the Plaintiff has proven herein that her claim for breach of contract meets the necessary standards required to establish such claim. Therefore, the Defendant's argument that Plaintiff's failure to establish her breach of contract claim nullifies her claims for breach of covenant of good faith and fair dealing and claim for breach of duty of good faith and reasonable diligence lacks merit. As Plaintiff has proven breach of contract, her claims for breach of the covenant of good faith and fair dealing as well as breach of duty of good faith and reasonable diligence cannot simply be summarily be dismissed as a matter of law, based on Defendant's unavailing argument that she failed to demonstrate a breach of contract.

Additionally, the Defendant's argument that the mortgage at issue points to no obligation requiring Ocwen to modify her mortgage, misses the mark entirely. Although Ocwen may not have an obligation to modify the mortgage given by Plaintiff, Ocwen does have an obligation to strictly comply with the terms of the mortgage at 9(d) which limits the Lender's ability to accelerate and foreclose if HUD Regulations do not permit it. It is well settled that paragraph 9(d) incorporates the HUD Regulations at 24 CFR § 203.604, which, as proven herein, Defendant failed to comply with. The Defendant's failure to comply with 24 CFR § 203.604, then accelerating and foreclosing the mortgage at issue, is a breach of the mortgage at paragraph 9(d). (See: Everbank v. Chacon, 92 Mass. App. Ct. 1101 (2017) ""failure to comply with 24 CFR 203.604(b) deprived Defendant of their right to invoke the statutory power of sale required to foreclose and the foreclosure was void ab initio"". ).

Since the parties had expressly agreed in the mortgage that acceleration or foreclosure is not permitted if not permitted by regulations of the Secretary the Defendant had not acquired the right to accelerate payment and take away the Plaintiff's equity in her home. (See Squire v. Virginia Housing Dev. Auth., 758 S.E.2d 55 (Va. 2014) ["because the mortgagee failed to give the required notice, it 'had not acquired the right to accelerate payment'.  Thus we affirmed the trial court's judgment awarding damages to the mortgagor"; "damages representing her loss of equity in her real property after the mortgagee had foreclosed" citing Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 654 S.E.2d 898 (2008)]; Mathews v. PHH Mortgage, 724 S.E.2d 196, 199-200 (Va. 2012) ("the fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent"; "by its nature, the deed of trust is a contract in which the parties have agreed that material breach of the note by non-payment will not deprive borrowers of their rights to enforce the conditions precedent"). Therefore, as the Plaintiff has proven the existence genuine issues of material fact which are in dispute, related to her claim for breach of contract, that claim cannot be decided as a matter of law. Similarly, Plaintiff's claims for breach of the covenant of good faith and fair dealing and breach of duty of good faith and reasonable diligence, supported by the establishment of Plaintiff's breach of contract claim, also cannot be dismissed as matter of law as Defendant argues.

## CONCLUSION

WHEREFORE, in light of the foregoing, Plaintiff has shown that there are issues of material fact in dispute with respect to her claims for breach of contract and that her claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of duty of good faith and reasonable diligence, cannot be dismissed as a matter of law.  Therefore, the Defendant's Motion for Summary Judgment fails as to those claims and must be denied.

November 7, 2018

Respectfully submitted,
Representative Plaintiff,
Josephine B. Donahue,
By her attorney,

/s/ Todd S. Dion, Esq.
Todd S. Dion, Esq. BBO 659109
15 Cottage Avenue, Ste 202
Quincy, MA 02169
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 7, 2018.

/s/ Todd S. Dion
Todd S. Dion